UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HEMANT BHAIDAS *et al.*,

                Plaintiffs,

    v.                                       CAUSE NO. 3:25cv242 DRL-SJF

KRISTI NOEM *et al.*,

                Defendants.

## OPINION AND ORDER

In October 2021, Hemant Bhaidas (a United States citizen) and son Jash Bhaidasna (a non-citizen) filed immigration forms with the United States Citizenship and Immigration Service (USCIS). Nearly four years later, their petitions remain pending. They sued Secretary Kristi Noem of the United States Department of Homeland Security (DHS), Acting USCIS Director Jennifer Higgins, and Attorney General of the United States Pam Bondi under the Administrative Procedure Act (APA). They also seek a writ of mandamus to compel the government to adjudicate their petitions. The government moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (b)(6). The court grants the motion in part.

## BACKGROUND

The court takes the well-pleaded allegations and reasonable inferences from the complaint as true in deciding this motion. Hemant Bhaidas is a United States citizen, his son Jash Bhaidasna is an Indian citizen, and both live in Marshall County, Indiana [1 ¶ 6-7]. On October 11, 2021, Mr. Bhaidas filed a Form I-130 Petition for Alien Relative with USCIS that named Mr. Bhaidasna as a beneficiary [*id.* ¶ 16]. On the same day, Mr. Bhaidasna filed a Form I-485 Application to

Adjust Status with USCIS [*id.* ¶ 17]; and on June 26, 2023, he completed the required biometrics at the designated USCIS Application Support Center [*id.* ¶ 18]. Though Messrs. Bhaidas and Bhaidasna have made numerous requests to USCIS to decide their requests, both the I-130 and I-485 petitions have been pending with USCIS for more than 43 months (as of briefing) [*id.* ¶ 19-20]. These gentlemen say they have endured significant financial and emotional burdens because of the delay [*id.* ¶ 25-28].

On February 5, 2025, Messrs. Bhaidas and Bhaidasna brought this action to compel adjudication of their petitions in the Central District of Illinois. On March 20, 2025, and in response to their unopposed motion to transfer, the case was transferred here. The government moved to dismiss for lack of jurisdiction and for failure to state a claim, and the parties completed briefing this past summer.

STANDARD

A Rule 12(b)(1) motion "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). When evaluating a facial challenge to subject matter jurisdiction, the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *See id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). On the other hand, a plaintiff facing a factual attack doesn't enjoy the treatment of his allegations as true. *See Bazile*, 983 F.3d at 279. In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.* The plaintiff bears the burden of establishing the jurisdictional requirements. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). The parties seem to argue this motion as a facial attack.

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

DISCUSSION

The Immigration and Nationality Act (INA) allows a United States citizen to file a Form I-130 petition for classification of a child as an immediate relative for immigration purposes. 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1). The Attorney General is responsible for investigating the petition and generally will approve it if the facts in the petition are true and the beneficiary is eligible. 8 U.S.C. § 1154(b). For a beneficiary living in the United States, approval of the Form I-130 enables him to apply concurrently for permanent resident status by filing a Form I-485. 8 U.S.C. § 1255(a); 8 C.F.R. §§ 245.2(a)(2)(i)(B), (a)(3)(ii). The Attorney General may grant, "in [her] discretion and under such regulations as [she] may prescribe," permanent resident status to any eligible applicant for whom an immigrant visa is immediately available. 8 U.S.C. § 1255(a).

Messrs. Bhaidas and Bhaidasna seek a writ of mandamus or alternatively relief under the APA for the government's alleged inaction and for unreasonably delaying the adjudication of their I-130 and I-485 petitions. The government seeks to dismiss the complaint, which it says insufficiently alleges unreasonable delay, asks for mandamus relief that is foreclosed by law, and fails to allege the Attorney General's individual role in the purported harms. The court concludes that it has jurisdiction in part, dismisses the mandamus claim, finds the complaint states a claim for unreasonable delay as to the I-130 petition, and declines to dismiss the Attorney General.

A.  *Subject Matter Jurisdiction.*

The first question is whether the court has subject matter jurisdiction. The government seems to say there is no jurisdiction because mandamus and APA relief are unavailable based on these allegations.[1] The government explains its position *vis-à-vis* mandamus, but it merely cites the general rule under the APA—when a statute precludes judicial review—before promptly moving on to discuss the merits under a six-factor test. In a respect, this conflates jurisdiction with the merits. Messrs. Bhaidas and Bhaidasna argue that the United States waived sovereign immunity for their claims and that they have adequately alleged unreasonable delay. But susceptibility to suit isn't the same as jurisdiction. All told, the court isn't so sure that either side quite has it right.

The court isn't limited to the parties' jurisdictional arguments, for it has an independent obligation to ensure its subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Smith v. Am. Gen. Life & Accident Ins.*, 337 F.3d 888, 892 (7th Cir. 2003). At the outset, the court is wary of treating a statutory prerequisite as a jurisdictional requirement. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568

---

[1] Accordingly, the court construes the 12(b)(1) motion as a facial challenge. *See Bazile*, 983 F.3d at 279.

U.S. 145, 153 (2013) (courts shouldn't "classify a statutory limitation as jurisdictional" unless "Congress has clearly stated that the rule is jurisdictional.") (citation modified).

The court has jurisdiction only as to the I-130 petition. The APA authorizes suit by any person suffering a legal wrong because of an agency's action or failure to act, including the agency's failure to act within a reasonable time. 5 U.S.C. §§ 551(13), 555(b), 702, 706(1); *Norton v. S. Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 61-62 (2004); *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). "Failures to act are sometimes remediable under the APA, but not always." *SUWA*, 542 U.S. at 61. The APA allows a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *SUWA*, 542 U.S. at 62; *Mashpee Wampanoag*, 336 F.3d at 1099.

Agency action includes all or part of an agency order, sanction, or relief, as examples (all defined in the APA), or the failure to act in these regards. 5 U.S.C. § 551(13) (defining "agency action"). Judicial review is limited—§ 706(1) permits a claim only when a plaintiff "asserts that an agency failed to take a *discrete* agency action that it is *required to take*," *SUWA*, 542 U.S. at 64, or asserts "a failure to take one of [these discrete] agency actions" defined by statute, *id.* at 62; *see also id.* at 63; 5 U.S.C. §§ 551(4), (6), (10), (11), (13) (defining such actions).[2] Though § 706(1) authorizes the court to compel agency action "unreasonably delayed," by definition "a delay cannot be unreasonable with respect to action that is not required." *SUWA*, 542 U.S. at 63 n.1.

The law is careful to distinguish between the court's power to adjudicate an issue and the court's ability to grant relief—the first jurisdictional, and the latter not. *Ahmed v. DHS*, 328 F.3d

---

[2] For instance, the failure to act in granting "relief"—a term defined by the APA as the granting of a privilege or acting on an application or petition beneficial to a person—may trigger judicial review. 5 U.S.C. §§ 551(11), (13).

383, 386 (7th Cir. 2003); *see also Builders Bank v. FDIC*, 846 F.3d 272, 274 (7th Cir. 2017) ("jurisdiction means a tribunal's adjudicatory competence, not whether a litigant has an ironclad defense") (quotations omitted). The APA doesn't grant subject matter jurisdiction; instead, so long as another statute has not foreclosed it, jurisdiction exists by way of a federal question under 28 U.S.C. § 1331. *See Califano v. Sanders*, 430 U.S. 99, 105-07 (1977); *Dhakal v. Sessions*, 895 F.3d 532, 538 (7th Cir. 2018).

Impulsively, just at a glance, this statement might seem incomplete given the APA's broader language. After all, the APA applies except when "(1) statutes preclude judicial review; *or* (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a) (emphasis added). The first exception indeed precludes judicial review because another statute deprives the court of jurisdiction, *see* 5 U.S.C. § 701(a)(1); *Soni v. Jaddou*, 103 F.4th 1271, 1272-73 (7th Cir. 2024) (affirming dismissal under 12(b)(1) when immigration statute barred review), but the second has been interpreted by our circuit as a decision on the merits when judicial review merely has been stymied, "unless a particular statute designates the subject as jurisdictional," *Builders Bank*, 846 F.3d at 274; *see also* 5 U.S.C. § 701(a)(2); *Vahora v. Holder*, 626 F.3d 907, 917 (7th Cir. 2010) ("This is not a question of whether this court has the authority to review, but rather whether the lack of any judicially manageable standard makes any review within our power, as a practical matter, impossible.") (quotations and citation omitted). After all, it would be an odd twist to interpret a statute like the APA—and it alone, to be clear—to limit jurisdiction when it never confers jurisdiction in the first place.

The government walks through none of this in opening and really none in reply. For Mr. Bhaidas's I-130 petition, the government merely nods to § 701(a) but stops short of arguing that

a statute bars judicial review or that USCIS retains unilateral discretion to adjudicate such a petition. The government only contends that it has not unreasonably delayed its decisionmaking. That isn't a jurisdictional point. Indeed, the government cites *Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984), as its framework for evaluating unreasonable delay, and *TRAC* explicitly treated the question of delay as a merits issue and not a jurisdictional one, *see id.* at 79; *accord United Afr. Org. v. Biden*, 620 F. Supp.3d 756, 767 (N.D. Ill. 2022); *Patel v. Rodriguez*, 2015 U.S. Dist. LEXIS 140155, 6-12 (N.D. Ill. Oct. 13, 2015).

The government returns only in reply to cite a string of cases that hold that judicial review was precluded when discretion was statutorily reserved to the agency. More particularly, for Mr. Bhaidasna's I-485 application, the government cites out-of-circuit cases holding that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of discretionary decisions by the Attorney General or Secretary of Homeland Security to delay adjudication of status adjustment applications under 8 U.S.C. § 1255(a) (the statute implicated by an I-485 application) due to shifts in policy stemming from the unavailability of visas (sometimes called the Adjudication Hold Policy). *See Geda v. Dir. United States Citizenship & Immigr. Servs.*, 126 F.4th 835, 842-45 (3d Cir. 2025); *Kanapuram v. Dir., United States Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307 (11th Cir. 2025); *Cheejati v. Blinken*, 106 F.4th 388, 393-96 (5th Cir. 2024); *Thigulla v. Jaddou*, 94 F.4th 770, 774-76 (8th Cir. 2024). How these cases might translate to this one is a nuanced question. And somewhat frustratingly, the government makes nothing of it; instead, the government cites these cases amid its discussion of the merits rather than jurisdiction, and, even then, just as support for the idea that the I-485 petition has not been stalled indefinitely.

Awaiting a reply, and then without real development, might well result in a waived point—but not if the point is jurisdictional. An inspected and admitted alien's status "may be adjusted by the Attorney General, in [her] discretion and under such regulations as [she] may prescribe, to that of an alien lawfully admitted for permanent residence" if he applies for an adjustment, is eligible, and a visa is immediately available. 8 U.S.C. § 1255(a). Under 8 U.S.C. § 1252(a)(2)(B), "[n]otwithstanding any other provision of law . . . , and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review— (i) *any judgment* regarding the granting of relief under section . . . 1255 of this title, or (ii) *any other decision or action* of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]" 8 U.S.C. § 1252(a)(2)(B) (emphases added). "Read harmoniously, both clauses convey that Congress barred court review of discretionary decisions only when Congress [] set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010).

This isn't a "judgment" regarding the granting of relief, even if "any" and "regarding" are given their expansive meaning. *See Patel v. Garland*, 596 U.S. 328, 338-39 (2022) ("any" means that "the provision applies to judgments of whatever kind under § 1225," and "regarding" "in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject"). Instead, it comes down to whether the agency's choice of prerequisites for an I-485 petition or its choice of priorities in deciding such petitions qualify as a "decision or action" for which the Attorney General has been conferred statutory discretion that, through the operation of § 1252(a)(2)(B), strips the court of jurisdiction. And they do, and she does, and it does. This petition cannot even be adjudicated until the I-130

petition has been processed—something these applicants acknowledge. *See Calma v. Holder*, 663 F.3d 868, 878 (7th Cir. 2011) (citing 8 U.S.C. § 1255(a)) ("Without the successful I-130 petition, he cannot adjust his status."). In a plain manner of speaking, the I-485 petition isn't even "on the clock." So Mr. Bhaidasna cannot be said to have perfected judicial review when he cannot show that USCIS failed to take one of the discrete agency actions that the agency is required to take. *See SUWA*, 542 U.S. at 62, 64.

The Attorney General "may" (not "must") adjust an alien's status "in [her] discretion." 8 U.S.C. § 1255(a). What makes an applicant eligible for relief under an I-485 petition, whether an applicant's status will be adjusted, and what sequence and resources are in priority put to its resolution are matters that, by statute, are not just confined to the Attorney General's discretion but removed from judicial review. *See* 8 U.S.C. §§ 1252(a)(2)(B), 1255(a); *Soni*, 103 F.4th at 1272-73 (same interpretation of "decision or action" as bar to jurisdiction under 8 U.S.C. § 1182(a)(9)(B)(v) when petitioner asked court to order State Department to decide an I-601A application after it was pending 17 months). When the statute says the court cannot review this discretionary petition, that is exactly what it means—the court lacks jurisdiction. 8 U.S.C. § 1252(a)(2)(B); *see also* 5 U.S.C. § 701(a)(1); *Builders Bank*, 846 F.3d at 274 ("the extent of agency discretion concerns the merits, not jurisdiction—unless a particular statute designates the subject as jurisdictional"). And it would be an altogether illogical, not just extra-jurisdictional, exercise for the court to order USCIS to decide a petition when the applicant admittedly has not even met a necessary predicate that is within the Attorney General's discretion to set. *See also Lobatos v. Noem*, 2025 U.S. Dist. LEXIS 110757, 9-10 (N.D. Ill. June 11, 2025) (reaching similar result under

§ 1252(a)(2)(B)(ii) for Homeland Security Secretary's discretionary decision to rule on a U-Visa petition, also unreasonably delayed). In short, the timing is intrinsically caught up in his eligibility.

Another case, *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002), seems not to change this result. Recounting longstanding principles of statutory construction, the need for congressional intent in limiting federal jurisdiction to be clear and convincing, and the general presumption favoring judicial review of administrative acts, *id.* at 496-97, the court of appeals held that the court could review an agency's denial of an expired application for a permanent resident visa under its lottery program, *id.* at 497-98. But there wasn't anything discretionary about the denial of an expired application (one deemed expired by regulation) to fairly call it either a "judgment" or a qualifying "decision or action." *Id.* at 498. Today's discretionary "action" to hold on the I-485 petition qualifies in ways the one in *Iddir* did not. *See Soni*, 103 F.4th at 1272-73. In short, the court has jurisdiction *vis-à-vis* the I-130 petition but lacks jurisdiction *vis-à-vis* the I-485 petition. The claim by Mr. Bhaidasna (under any theory) must be dismissed for lack of jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(B) ("[n]otwithstanding any other provision of law . . . ").

For the I-130 petition, the government offers no explanation why the court lacks mandamus jurisdiction. Federal law provides mandamus jurisdiction for actions against a federal officer or agency to perform a duty owed to a plaintiff, 28 U.S.C. § 1361, and, under the All Writs Act, allows federal courts to issue writs "necessary or appropriate in aid of their respective jurisdictions," without enlarging such jurisdiction, 28 U.S.C. § 1651(a); *see In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001). A mandamus action loses its jurisdictional mooring when it is frivolous; if not, the court evaluates the claim on its merits. *See Ahmed*, 328 F.3d at 386-87 ("unless the claim is so frivolous that it fails the [federal] test, the [] court has jurisdiction under § 1361 to determine

whether the prerequisites for mandamus relief have been satisfied"); *see also Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ("suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous"). The assertion that USCIS's now-47-month delay in reviewing the I-130 constitutes an unreasonable delay isn't frivolous, so the court has jurisdiction over this mandamus request. *See, e.g., Lubega v. Mayorkas*, 2024 U.S. Dist. LEXIS 168727, 7 (N.D. Ill. Sep. 11, 2024) (26-month delay decided on merits rather than on jurisdiction). The court thus turns to the Rule 12(b)(6) motion in these sole remaining respects.

    B.  *Mandamus.*

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes," like "judicial usurpation of power . . . or a clear abuse of discretion." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quotations and citations omitted). "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Iddir*, 301 F.3d at 499). The government says Mr. Bhaidas (the sole plaintiff now remaining) can't satisfy the third element, as a matter of law, because relief is available under the APA. Mr. Bhaidas responds that he is entitled to plead alternative theories of relief.

Because injunctive relief is possible under the APA, the third element isn't satisfied. *See Lubega*, 2024 U.S. Dist. LEXIS 168727 at 2 (dismissing mandamus claim to compel adjudication of Form I-130 and collecting cases). The court is well aware of the difference between claims and

legal theories in the context of Rule 12(b)(6), *see, e.g., Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025); *Bilek v. Fed. Ins.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015), but as a matter of law and conceivably as a matter of operative fact there must not be another adequate remedy to obtain mandamus relief. When there is one, and there is no reasonable debate that there is one available under the APA, a mandamus action cannot proceed in the alternative. *See Ebrahimi v. Blinken*, 732 F. Supp.3d 894, 908 (N.D. Ill. 2024) (collecting cases). The mandamus action will be dismissed.

    C.  *Unreasonable Delay under the APA.*

    The government says the complaint fails to allege a plausible claim of unreasonable delay. Though not formally adopted in this circuit, many courts consider six factors from *TRAC*, 750 F.2d at 80, as useful guidance in evaluating unreasonable delay for immigration decisions under the APA, though these factors are not intended to be exclusive. *See, e.g., Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816-820 (D.C. Cir. 2024); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021); *Garcia v. DHS*, 25 F.4th 430, 451-52 (6th Cir. 2022); *Irshad v. Johnson*, 754 F.3d 604, 607-08 (8th Cir. 2014); *Ebrahimi*, 732 F. Supp.3d at 911-14; *see also Menominee Indian Tribe of Wisc. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) (*TRAC* provides a "general framework for deciding claims of agency delay").

    These factors include (1) whether the agency followed a rule of reason governing the time it takes to make a decision, (2) whether Congress provided a timetable it expects the agency to follow in the enabling statute that might inform this rule of reason, (3) whether human health and welfare are at stake such that a delay would be less tolerable than what might be reasonable in the sphere of economic regulation, (4) what effect expediting delayed action would have on

agency activities of a higher or competing priority, (5) the nature and extent of the interests prejudiced by the delay, and (6) whether any impropriety lurks behind the agency's lassitude, though such a finding isn't necessary to hold that agency action has been unreasonably delayed. *See TRAC*, 750 F.2d at 80. "The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus [or injunctive relief]." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quotations and citation omitted).

The parties employ the *TRAC* framework to assess this complaint, and the court follows suit. The court does so with a healthy reminder—an applicant need only allege a plausible claim, not a probable one or even now prove one. *See Iqbal*, 556 U.S. at 678. Courts commonly use the *TRAC* framework at the pleading stage to assist with assessing a pleading's plausibility, *see Ebrahimi*, 732 F. Supp.3d at 910 (citing cases), though a claim of unreasonable delay is "necessarily fact dependent" and often "sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Gonzalez*, 985 F.3d at 375; *accord Garcia*, 25 F.4th at 451 (repeating same); *Mashpee Wampanoag*, 336 F.3d at 1100 ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").

1.   *Factors One and Two: Rule of Reason and Timetable.*

The first two factors concern "the extent of and reasons for the agency delay." *Afghan & Iraqi Allies*, 103 F.4th at 816. They often walk hand-in-hand because together they assess whether the government has a "sufficient rhyme and reason" that explains its response time. *Ebrahimi*, 732 F. Supp.3d at 910 (quotations and citations omitted). The first—one of the "most important" factors, *In re Core Commc'ns*, 531 F.3d at 855—more particularly concerns whether the time the

agency takes to make its decisions is governed by a rule of reason, *TRAC*, 750 F.2d at 80. The court must assess "whether the agency's response time . . . is governed by an identifiable rationale," *Palakuru v. Renaud*, 521 F. Supp.3d 46, 50-51 (D.D.C. 2021) (quotations and citation omitted), or whether this pleading plausibly suggests the opposite.

The government posits that USCIS employs a "first in, first out" rule, merely addressing a petition in the order it is received. Mr. Bhaidas acknowledges that such a policy might suffice to offer something neutral and reasonable as a rule, except that he pleads something altogether different. He pleads that USCIS *lacks a reason* for not making a decision on the I-130 petition by now [1 ¶ 36]—an allegation that, at the pleading stage, the court must accept as true. He adds some context to this; this isn't just a bald conclusion. He alleges that USCIS has all the information, has completed its initial investigation, and has but a ministerial (nondiscretionary) task to perform [*id.* ¶ 2, 32, 34], thereby suggesting its ease; and he alleges that, despite inquiry, USCIS has never offered a reason in over 39 months (now 47 months) for the delay [*id.* ¶ 19, 24]. Of course, an agency need not confirm that it is already doing what it has been tasked by law to do, and such inquiries might merely add to the delay if they came *en masse* and pull personnel and resources from the important work of the day. The point is simply that no one need assume that the allegation that USCIS lacks a reason should be viewed as something less than plausible, taking all inferences in favor of Mr. Bhaidas as the court must at this stage. In briefing, he says the I-130 petition was assigned to a specialized team trained to handle this ministerial type of petition, so he consistently augments the complaint with a fact that, together with the other allegations, plausibly counter the assumption that the mere reason for the delay must just be the number of

applications pending before theirs. *See United States ex rel. Hanna v. City of Chi.*, 834 F.3d 775, 779 (7th Cir. 2016).

Now the government may well have a sound rationale for the delay, and that may be as simple as "first in, first out." There is fairness in everyone waiting his or her turn. And these decisions are important and worthy of the agency's conscientiousness. One cannot use litigation as a means of jumping the line to the detriment of other patiently-waiting applicants. The government cites other cases that have recognized this rule of reason for USCIS's processing of other types of matters, but this time the government provides the court no law or regulation, or even a judicially noticeable source, for this "first in, first out" protocol for these petitions, as often appears in these other cases about other petitions. Nor does the government explain why the mere existence of a rule must mean that the agency is following that rule—two separate questions, and at least the one is not answerable at this pleading stage. Nor does the government cement this rule as though it works without exception; indeed, the government says "many factors may affect how long it takes USCIS to complete an application"—leaving one to muse what those might be. *See Garcia*, 25 F.4th at 453 ("the machinery of the U-visa and prewaitlist-work-authorization adjudication processes is known only to USCIS"); *Gonzalez*, 985 F.3d at 375 ("we do not know enough about how the agency implements its rules and exceptions"). The court might surmise, even then sympathize, with the likely number of petitions that USCIS must decide or process (not least when now faced with a government shutdown), but that would be mere guesswork today when the court must assess this pleading alone and when the government offers no adjudicative facts on which to understand the queue. *See* Fed. R. Evid. 201; *Gonzalez*,

985 F.3d at 375-76 (no record of agency's constraints); *cf. Aljabari v. Mayorkas*, 2022 U.S. Dist. LEXIS 103212, 9 (N.D. Ill. June 9, 2022) (citing number of applications).

The second factor considers whether Congress has established a timetable for the agency's action to "supply content" to the rule of reason. *TRAC*, 750 F.2d at 80. Mr. Bhaidas observes that Congress has adopted aspirational guidance for processing his petition, restating Congress's "sense" that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. 1571(b). The government presses that there is no statutory timeline for processing visa applications, but it also cites *Da Costa v. Immig. Inv. Program Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023), which treats Congress's aspirational guidance, albeit "insufficient to set a deadline," as a "ruler against which the agency's progress must be measured." *See also Garcia*, 25 F.4th at 454 (considering the same 180-day aspiration). Time alone typically won't support a claim of unreasonable delay. *INS v. Miranda*, 459 U.S. 14, 18 (1982). Still, these applications are nearing the four-year mark—far beyond the 180-day target articulated by Congress—appreciating that the target is more hope than decree.

From there, the parties exchange and battle over published wait times from USCIS. Mr. Bhaidas alleges an historical average processing time of 10.2 months to adjudicate I-130 petitions from 2021, the same year he filed his petition, and even during the headwinds of the COVID-19 pandemic [1 ¶ 22]. If an appropriate measure, he has waited more than four times as long. The government responds by citing statistics for a 53-month turnaround for 80 percent of petitions (as of June 2025), which would seem to suggest that work has become heavier over the years. Mr. Bhaidas points out a different statistic, a median from fiscal year 2021 of only 28 months for I-

130 petitions (for adoptions rather than alien relatives). By definition, this means that half of cases were adjudicated less than 28 months and half over 28 months.

Some courts have found delays of two years up to four years plausible enough; some have not ultimately concluded that such a delay was unreasonable. *See e.g., Lubega*, 2024 U.S. Dist. LEXIS 168727 at 4 (citing cases); *Brzezinski v. DHS*, 2021 U.S. Dist. LEXIS 175006, 11-13 (D.D.C. Sept. 15, 2021) (citing cases); *Sarlak v. Pompeo*, 2020 U.S. Dist. LEXIS 101881, 16-17 (D.D.C. June 10, 2020) (collecting cases). The court has no record of whether a bona fide adjudication of an I-130 petition is an extremely complex or labor-intensive task, and Mr. Bhaidas at least pleads that it isn't. The court has no record of the resources available to handle a so-called ministerial task among all that the USCIS must address. These statistics from the parties might just as easily hold the agency in critique than justify a four-year delay. Whether they ultimately do inform the statutory question of "unreasonable delay" or prove irrelevant, *see Garcia*, 25 F.4th at 453, or whether they might inform the operation of any "first in, first out" rule that may be adopted, the court cannot say the complaint has not alleged a plausible theory of delay when these two factors, to some measure, favor this applicant at this stage.

2. *Factors Three and Five: Human Health and Welfare or Interests Prejudiced by Delay.*

Courts often evaluate the third and fifth factors together, *see, e.g., Afghan & Iraqi Allies*, 103 F.4th at 817-18; *Da Costa*, 80 F.4th at 344-45; *Barrios Garcia*, 25 F.4th at 452, and it is convenient to do so here. The third considers that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. The fifth factor is similar but broader, accounting for "the nature and extent of the interests prejudiced by delay." *Id.*; *see Da Costa*, 80 F.4th at 344.

These factors weigh in an applicant's favor when his wellbeing is imperiled by the delay. Examples include Afghan and Iraqi special-immigrant visa applicants who helped the United States "at great personal risk" during armed conflict and faced "a substantial risk of retribution," *Afghan & Iraqi Allies*, 103 F.4th at 811, 812, or non-citizen victims of serious crimes who cooperated with law enforcement and, because their immigration applications were in limbo, couldn't obtain identification cards, healthcare, insurance, or lawful employment, risked removal from the United States, and couldn't reunite with family abroad because they couldn't lawfully travel to and from the United States, *Barrios Garcia*, 25 F.4th at 437, 452. In contrast, generalized welfare risks, moderate financial harms, and the personal and familial strain sourced in uncertainty are often insufficient. *See Da Costa*, 80 F.4th at 344-45.

Mr. Bhaidas largely faces the latter sorts. The complaint alleges he has incurred costs and attorney fees and has been denied the right to petition for his son to become a permanent resident [1 ¶ 40]. As a father, he may also experience some measure of prejudice due to the uncertainty and inconvenience faced by his son while their applications pend. These include limits on his son's ability to pursue his desired career with the United States Air Force [*id.* ¶ 27], though he acknowledges his son is authorized to remain in the United States and seek lawful employment in the meantime. Any greater concerns aren't before the court. Mr. Bhaidas alludes in briefing to "humanitarian concerns" without providing explanation. And it's difficult to imagine what they might be given his and his son's presence in the United States and seeming ability to remain and subsist. Frustrating as instability may be, father and son are inhibited, not imperiled. At the same time, the court cannot say on this pleading that Mr. Bhaidas has pleaded no prejudice beyond just money and inconvenience, even if slight.

       3.  *Factor Four: Effects on Competing Priorities.*

The fourth factor concerns the impact of expediting these applications on competing priorities at USCIS. *TRAC*, 750 F.2d at 80. The government says the plaintiffs offer no justification other than the fact of their lawsuit to allow them to "skip the line" and suggests that rushing their applications would encourage other suits, producing no efficiency gains but burdening the judiciary and indeed proving a draw on USCIS resources. Mr. Bhaidas says the government doesn't show that processing his petition now would disrupt other priorities and presses that he doesn't seek preferential treatment, only timely resolution.

Both arguments are somewhat speculative—hence the very reason that their resolution today proves ill-suited to a motion to dismiss. The court can't say based on the complaint (or arguments) whether granting the relief sought would result in lawsuits or be nondisruptive. Precedent focuses on what is concrete. In a comparable context, the court of appeals asked whether an applicant had "a right to skip ahead of other petitioners who filed an application before [him], but who are also waiting for adjudication." *Calderon-Ramirez*, 877 F.3d at 275 (evaluating unreasonable delay claim for U-visa petition). Here, Mr. Bhaidas offers no reason why he should be entitled to leapfrog others in his same position, but he also clarifies that he isn't trying to do that. The complaint alleges that USCIS's task is not just ministerial but so plainly prescribed as to be clear and free from doubt [1 ¶ 32]. And it further says USCIS lacks a reason for delaying adjudication of his petition [*id.* ¶ 36]. Though slight, this suggests not only that adjudication of his petition would not impact other competing obligations, but also that competing obligations simply do not exist. This may be altogether wrong when the facts are known, but that is for proof not pleading.

4. *Factor Six: Impropriety.*

The sixth factor concerns whether delay is the product of impropriety, though an affirmative finding isn't needed to identify unreasonable delay. *Da Costa*, 80 F.4th at 345-46 (citing *TRAC*, 750 F.2d at 80). Mr. Bhaidas calls the agency's action arbitrary and capricious in the complaint, but he offers nothing untoward in the USCIS's condut to date.

Considering all factors together, Mr. Bhaidas has plausibly alleged enough to proceed on his APA claim—the only one over which the court has jurisdiction. Affording him all reasonable inferences as the court must, at this early stage of the pleading, the first, second, fourth, and fifth factors weigh to some degree in his favor, whereas the third and sixth factors trend against him. Only the facts will determine whether this analysis changes or whether the near four-year delay is "so egregious" that it could warrant relief. The court must deny the motion to dismiss.

D. *Attorney General Bondi.*

The government says Attorney General Pam Bondi should be dismissed because the complaint fails to make any specific allegations about her role in an alleged harm. A defendant is properly dismissed when the complaint "alleges no specific act or conduct on the part of the defendant." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). But the complaint alleges unjustified delay in an action that is the Attorney General's responsibility—an I-130 petition is filed with the Attorney General, 8 U.S.C. § 1154(a)(1)(A)(i). This implicates the Attorney General at the pleading stage. The government also says the Attorney General should be dismissed because the complaint fails to allege a constitutional violation; though no constitutional violation is asserted, and hence the reason the court has not discussed 8 U.S.C. § 1252(a)(2)(D), *see Cevilla v. Gonzales*, 446 F.3d 658, 660-61 (7th Cir. 2006), the government doesn't explain why the

20

Attorney General is an improper defendant for an APA claim. Outside jurisdiction, the court cannot craft arguments the parties have not developed. The court must deny the motion in this regard too.

CONCLUSION

The court hopes USCIS can soon provide closure to Messrs. Bhaidas and Bhaidasna by adjudicating their petitions in the normal course. For today, the court dismisses the claim concerning Mr. Bhaidasna (thereby terming him as a plaintiff) and his I-485 petition as well as the separate claim for a writ of mandamus, but denies the motion to dismiss Mr. Bhaidas and his claim for an unreasonably delayed I-130 petition as the court cannot say the complaint lacks a plausible basis to proceed on an APA claim. Accordingly, the court GRANTS IN PART and DENIES IN PART the government's motion to dismiss [14].

SO ORDERED.

October 22, 2025                              *s/ Damon R. Leichty*
                                             Judge, United States District Court